BIS Salamis, Inc., Signal Mutual, Indemnity Associated, Ltd. v. Director of the Office of Workers' Compensation Programs, United States Department of Labor, Joseph Meeks. And first, Mr. Smith. May it please the Court, Thomas Smith for BIS Salamis and Signal Mutual. Your Honor, this is a case where an AOJ, to his credit in my opinion, stood up and said this following no further, he made factual determinations that were turned on the credibility of the claimant, the respondent here. Those factual determinations were supported by substantive evidence. He applied the law properly and what has happened is that the BRB has essentially decided they don't like the result and they want to change that. The judge tried the case initially, I don't need to get too much into the facts, but I think it's kind of critical to note, at least interesting, that the judge held in his opinion that the claimant's demeanor during the hearing failed to create any confidence in the accuracy of his testimony or even his motivation to at least attempt to tell the truth. And goes on to say, in short, the record demonstrates the claimant has a clear history of saying whatever he believes and is of financial best interest. Therefore, I give his testimony and any medical evidence based on his history or subjective reports almost no weight. All right. So let me ask you this. Yes, ma'am. What happened factually? I'm having a lot of trouble with this accident. This guy's in like some sort of basket and there's some indication that he's like dropped for 10 feet and that doesn't seem like your typical I bent over and pulled my back and now I can't work anymore workers' comp claim. And I'm not saying that all workers' comp claims are like that. I'm saying that those are the ones that typically yield this kind of derision about it's sort of a fake injury. This sounds like the kind of accident that could create a real injury. The judge didn't agree that there was a 10 feet. He said something happened. He didn't necessarily agree that it was a 10 feet. But weren't there other people there? I mean, this guy didn't just get dropped in a basket by himself. What was the evidence about? I'm just having trouble understanding what happened. Well, the evidence... Isn't there anybody to tell us, besides this guy that nobody believes, what happened? I didn't necessarily have to bring anybody in for that. I don't believe there was anybody else there at testimony to testify about it at the time. So we really don't know, was he dropped 10 feet or did he just kind of stumble or, you know, pull his back or whatever? Well, what we know is, according to the judge, after having heard the testimony that the claimant said, after whatever event occurred, and the judge even says something occurred, I'm not sure what it is, afterwards he said, I'm okay. And the judge specifically says that's the only credible thing the man said in the trial. Basically he takes the position that's the only time the man told the truth. So whether it was a 10 foot fall is a huge... I mean, right after an accident, you may not realize, I mean, there was a guy who was on Everest and he went out to relieve himself and he falls down an embankment and they went and picked him up and got him up and he thought he was fine and two hours later he died of internal injuries. So we know that you can think you're not, you're okay, and you're not. And so a lot of it to me is what happened, like what happened that... If he was dropped 10 feet, then it doesn't seem that unreasonable to think he could have hurt his back. And the burden is on him under our 28 to get the presumption, the causation, the one we're really here arguing about, the burden is on him to show that he had an injury as an event that occurred, that a condition occurred at work or was created at work. It's not my burden to prove either one of those things necessarily. We take the position it didn't happen as he described, the judge takes the position it didn't happen as he described. But be that it may, that was his burden and he didn't meet it to the extent, as you say, you're asking about, well, what might have happened, what could have happened. Do you agree there was an injury? It's just the extent of how serious that injury was? I mean, falling 10 feet. I don't agree that he fell 10 feet, Your Honor, obviously, but I understand he says that. Of course, he says a lot of things. Nobody else was hurt. Nobody else came forward and claimed in the open basket that they were hurt. Now, what's the standard of review that the board uses in reviewing an ALJ's factual findings? They can only revert, if there is substantial evidence to support his findings, they have to affirm. Substantial evidence. It doesn't have to be preponderance, they don't have to make the same conclusion based on that evidence. There only has to be substantial evidence. Now, what standard of review does this court use in reviewing the board's overturning of the ALJ? Well, the court should affirm, in this case, the ALJ's finding, provided that it is also supported by substantial evidence. Unless the court finds, this court finds, that there was not substantial evidence to have to reverse the BRB and say, no, you don't get to come in and put your, you don't get to decide the case. You didn't see that? So no deference to the BRB, I think, is the question. That's my understanding. That is correct. None to them, on factual issues, where, unless the court agrees that there was no substantial evidence to support the ALJ. And that's what the BRB has come back and said, there's no substantial evidence, but they don't, that in there is just them substituting their judgment, saying, and the substantial evidence that they say rebuts or is inconsistent with the ALJ's finding is the fact that this man, with his third-party action and his separate lawsuit, who has already testified and proved that he will do whatever it takes to get money, underwent a surgery. So you're saying, when we look at the Section 20 presumption issue, we can't even presume that there was this 10-foot drop? That's correct. The burden is on him. He hasn't really shown that. According to the judge, the ALJ who heard the facts, he says, something happened. I don't know what it is. To answer your question, if I may, Judge Prado, if I may call you directly, Judge, Your Honor, the question of whether he had an injury, the ALJ found that there was a strain that resolved, and that was it. So there was an event, not necessarily a 10-foot drop. The judge doesn't know because the facts don't, they're not there to establish that, and that was the claimant, or in this case, the respondent. And what he had, as a result of anything, was a back strain, as diagnosed by the first doctor he saw, and evidence of significant and substantial pre-existing conditions. Nobody's arguing that he didn't have pre-existing conditions. He had a lot of them. He had a bad back. He had a lot of other medical problems, but be that as it may, there was an injury, but that injury resolved from whatever the event was. Both of those are his burden. Now, there is an argument being made by the respondent that this panel should change the Fifth Circuit's law in that regard, and move from placing the burden on the plaintiff to establish the elements to get his prima facie case, to one where mere allegation of an injury is sufficient, and the credibility or determination is irrelevant to that. Basically he is asking this court to say, if the claimant comes in and says, I'm hurt, the burden shifts to me as the employer, or the carrier, to establish that he's not hurt, not that he, and he gets the 28 presumption by merely alleging that he's hurt, all right? And his argument, I trust the court has seen it, but I suggest that the argument is based on a flawed premise and leads to an absurd result. He takes the position that if you require me to prove that I have an injury, you have nullified the effect of 28 because, hey, I have evidence of something happening. You have nothing. I would win this even in the absence of a presumption. That's too broad of an interpretation and doesn't really understand what 28 does. Yes, you have the burden of proving you have a harm or an injury. You have the burden of proving that a condition existed. Then you get the benefit of the presumption of causation. Then I'm in a position of having a rebut. It's a very real benefit. This is not some nullity just because you have some burden. It's like any other prima facie case. You prove certain things and you get a benefit. So what should he have done? Assuming that we have to credit the ALJ's finding that Mr. Meeks has no credibility, what should he have done to prove this, say, ten foot drop or whatever? What are we missing here? I suppose he could have trotted anybody he wanted to on that point, Your Honor. I mean, he could have had a- Brought a witness who was there. There were other people there is what you're saying. Yes, ma'am, and my best recollection is that nobody else made a claim. Nobody else claimed they were injured. Other people were in the basket, and none of those people testified. Nobody testified, and I'm reasonably certain there were other people in the basket. I thought there were handwritten statements from people who were in the basket that said the personnel basket was lowered too quickly. The boat was pitching in rough seas. There was miscommunication between the crane operator and the people on the vessel. The basket smashed against the side of the rail of the vessel. It bounced. It hit the deck at least twice, once or twice, and it tossed men from the platform onto the deck along with the groceries they had in the basket. Again- Is that evidence or not? The statements, I don't specifically recall if the statements came out. I suspect they did, but again, there's nothing in there about a ten-foot fall that said it hit something and they went down to the deck. The judge had all that to consider. People more than Meeks were thrown out of the basket onto the deck. According to the statements, Your Honor, but I don't know that nobody came in and testified. There was no testimony, no direct testimony, no opportunity for cross-examination, none of that. Do we know how many people were in the basket? I can't tell you as I stand here. Do we know if any of them else claimed that they were injured and put in a claim? I'm not aware of any other claims as I stand here, and I'm not trying to be cute. I just don't remember anybody else making a claim on it. It's the only one I've had to try, and I don't think there was anything else. Now, you did have- He did have a back issue of some sort because he had surgery, but the issue was not related to the accident, incident, whatever it is. Per the ALJ, based on his review and his opportunity to see the demeanor of the claimant, his review of the medical records, his determination as to which expert was to be believed, all of this falls clearly within his purview. Maybe nobody liked, maybe the BRB did not like that it came down this way, but it doesn't change the fact, that doesn't empower them to simply say, we don't like your decision, as long as he has substantial evidence to support the decision. And he says, you can't believe anything the man says. All he's got is this minor strain. He could go back to work. He was good to go, and we're done. Then they sent, as the court's probably aware, it went up once to the BRB, who said, you didn't consider 20A, although I'm sure he scratched his head and said, I don't need to consider 20A, I said he wasn't hurt. But he doesn't may, he said, I'll look at 20A because you tell me to. He's not hurt, all right? He doesn't have a back injury. He might have a loose tooth or something like that. He doesn't have a back injury beyond the strain, and so what do I apply 20A to? He hasn't met his burden. I'm done. That's when the BRB finally came in and said, we just don't like your decision. You're going to have to, we're going to tell you to decide something. But you know, I'm a little bit confused about that. I think probably technically we don't give deference to the BRB in the technical sense of standard review. But they are a board that's tasked with, they do this every day, and we don't, okay? Every single day they're dealing with injured claimants and so on and so forth. Why would they so strongly countermand an ALJ where there's surveillance of this guy picking stuff up and whatever? And he does seem like, I'll accept ALJ's word, no offense to Mr. Meeks, I don't know him, but that Mr. Meeks is completely not credible. And yet the BRB very strongly feels, obviously, that the ALJ was wrong to deny relief. So how can we make sense of that? And why are we in sort of a better position than they are to understand this area of the law? I respectfully observe that they are not in a better position than the ALJ to determine what this gentleman's claim was and how believable he was. No, they're not better than the ALJ, but are they better than us? I realize we're the higher court, so to speak, so I mean, I get all that. But they are a more specialized court. Should we show them any deference in sort of a practical sense, even not a legal sense? Not under the circumstances where they have decided that they're going to apply the law in a way that's not the way the law was intended to be applied. And that is this 28 presumption and how it's actually applied in this case. What they did, quite simply, is say, look, we don't care about the facts, even if you have substantial facts, 28 says he wins. And they miss the critical part, and this is why there shouldn't be any deference. They miss the critical part that you still have to show some harm. You don't get to come in and say, BRB, we think there was harm, because that's essentially what they've done. They have substituted on that critical factual issue their judgment. There's no particular reason they should be given any deference in that regard. That's the function of the ALJ. It's not their function to come in and simply say, we don't think you were right about that, because he subsequently had a surgery. Their argument is, he had a bad back. We're not arguing that, he had a bad back. He had a terrible back from all kinds of pre-existing problems. Okay, we can see that point. And he had a surgery, therefore he must have had harm. No, it doesn't follow from that, that he had a harm when the facts indicate that with respect to his complaints for what arose out of this event, they simply are not to be believed. And the doctors have to believe, doctors are not going to operate on a condition without legitimate complaints of pain. That's a reality of the 31st year doing this, they all say the same thing. I don't operate on conditions, I operate on symptoms and complaints. Without that, I can't operate. If you come in with a bad back and say, well, I feel great, they're not going to cut on you. So they have to rely on his complaints. There's no reason to give deference to the BRB's decision. But you're saying the objective findings are as consistent with somebody having pain as not having pain. And the difference for the doctors is they believe their patient, because that's what they do. And the ALJ doesn't believe this particular patient. That's correct, there are lots of reasons that people come in and complain about pain, as I'm sure the court is aware. Especially if there's a financial interest, he has a third party action floating around out there. Lots of reasons doctors will accept that. Many of them perceive that they are in fact the advocate of the patient. Others- Well, and he very well could have had pain before the accident, and now here's his chance to fix it. He may have, we don't know. But what we do know is that the finder of fact in this case, at the first instance, based on substantive evidence, says no, I don't think he would, he hasn't shown the harm that he is now complaining of as far as the back surgery and the disability go. And I've got four things I wanted to get to. If you accept, well, I have a bubble, so I will stop at this point, unless there are any more questions immediately. No, but when it goes to zero, there's a trap door and you fall to seven feet. It's zero, that's why I'm stopping. And then you might get your back injured because. It got to zero, I stopped. No, you like it. I stopped in mid-sentence, I think. It's ten feet exactly down there. Mr. Gillian. May it please the court, I am Joshua Gillian, appearing on behalf of Mr. Meeks. The signal presented no evidence at all, contrary to the uniform medical opinions, that a month and several months after this injury, this witnessed, admitted injury, admitted accident, excuse me, on the job. Presented no evidence that his condition several months later, or within a month after that, was consistent with offshore work or showed no injury. In fact, there's no evidence whatsoever to address one of Mr. Smith's final points, that the multiple ruptured herniated discs, as well as extensive stenosis in both the cervical spine and the lumbar spine, was consistent with being able to work offshore in strenuous work. As to what it was that happened in this transfer basket incident, the ALJ on page 10 of his statement by the supervisor, who was not in the transfer basket and did not actually see the impact, but his statement is the most extensive. This is the employer's own witness, and this is their exhibit. It's employer's exhibit number 22. There's a short version, which is one paragraph, and a longer version that's just over a page long. That contains a far more detailed and different from the ALJ's account of the course of events, and the delay between the original fall. There were two more transfers between then and the time Mr. Meeks said, yeah, my back is hurting too much, I can't keep working. And at that point, they- Was there a 10-foot fall, and if so, who said so besides Mr. Meeks? Was there a- 10-foot fall. 10-foot fall? I don't know. No one but Mr. Meeks characterized it as 10 feet. What there was was a violent collision between the deck of the crew boat and the transfer basket, which was coming down as a swell lift. There were other people in the basket. There were three other people. What happened to them? There is not a shred of evidence. None of them was called. No statements were introduced. We don't know. We have nothing but Mr. Smith's testimony this morning. Why isn't it your client's burden to show what happened, and if your own client's testimony is incredible as found by the ALJ, and we're not in a position to disagree, then how can that support the dramatic, the more dramatic story? This is, in fact, the crux of this case. It is a legal question whether the presumption was in vogue. That is not a question for the ALJ's exercise of his or her authority to evaluate conflicting evidence and make factual findings. It is a legal question whether the presumption was invoked, just as it is a legal question whether the presumption was rebutted by the employer's evidence. But I thought that the question on the presumption is like, could this accident have caused harm? Not did it, but could it? And don't we have to know what this accident is to know that? We have his testimony about it. We also have the- But, so it doesn't matter, he can get up and say, Martians landed on this ship and shoved me on the deck and I fell, and you could go, well, yeah, if that happened, man, that could hurt. Therefore, the presumption's invoked? I mean, is there, and I realize that's a ridiculous example, but basically the ALJ is saying that's what he thinks of Mr. Meeks. Almost precisely the example I was thinking of as I thought about this oral argument. Yes, there may be a point at which the asserted mechanism of injury is, as the D.C. Circuit put it in a few older cases, a mere wisp of fancy. And if the asserted mechanism of injury does not rise to that level, then okay, perhaps the employer doesn't have a burden, although I don't think there's much consequence of saying that, no, we'll apply the statute as written, there is a presumption. As soon as he files the claim with enough allegations to make out, if the allegations make out a prima facie case, and this is what the Supreme Court has said in U.S. industries, if the allegations of the claim make out a prima facie case, the burden is on the employer to come forward with evidence to the contrary. Now that may not be very difficult for the employer to do if the asserted mechanism of the injury is little green men. Can we tell from the record or why the ALJ questioned the credibility of your client? I understand there might have been a video that showed that he was not as healthy or healthier than he claimed or something. Is that what set off the ALJ, or can we review the record and see some cross-examination or something that questioned his credibility or a conflict between him and the doctor's testimony? Where is there evidence of his credibility, questioning his credibility? None of that. No cross-examination, no inconsistencies, but ... I thought he lied about why he originally went to see a doctor that his lawyer sent him to. He said, oh no, my relative sent me, and he finally admitted to lying about that. Absolutely. There was some discrepancy. There were some untruths told in the course of his deposition, but they were not about the occurrence of the injury and they were not about his condition. But he was caught in several lies. He was caught in lies, absolutely, and he had filed false tax returns. The ALJ seemed to ... Bump up his income to prove bigger damages. No. The false income tax returns were the earlier ones he had filed that said he had only made $16,000 or $20,000 in a year. The amended tax returns he filed when he filed a lawsuit and when he had this compensation claim pending, those are the ones that accurately reported his income. There's no suggestion that those were in any way untrue. But yes, he had filed false tax returns previously. He had been convicted of a drug offense that was quite a ways in the distant past, but he had been convicted of a drug offense and denied that. He had had past injuries and did not report that when asked when he was interviewing for the job. On the basis of those things, the ALJ found him. And those things and the lies he was caught in in deposition, none of which was central. There were exactly such things as what you mentioned. So he testified live in front of the ALJ? Yes. So assume he got to the presumption stage. Yes. Why can't we say that there's substantial evidence to support the ALJ's conclusion that everything he told these doctors was untrue? He's got the video. He's got all . . . why can't . . . isn't there substantial evidence that this presumption was rebutted? The ALJ himself agreed in his final decision that if the presumption was invoked, there was no substantial evidence to rebut it. There was no evidence that the claimant's condition . . . you know, remember again, we have four doctors who testified here, two of whom were defense medical examiners. Defense medical examiners do not approach . . . I can assure you, they do not approach injured workers, assertedly injured workers . . . Let's back up. I thought you said all the . . . under your view of the law, all that's required is an allegation. Yes. True or not is an allegation to get to the presumption. Yes. So if you're right about that, you get to a presumption. Yes. But then the ALJ found that his testimony alleged . . . his allegations were untrue, and that there was no evidence in the ALJ's view to support his claim that this bump or fall on the deck or collision, whatever, caused anything other than a back sprain and a chipped tooth. I think what you said is precisely correct. The ALJ found there was no credible evidence to support that those were the facts. What we ask, if we're looking for whether the presumption, having been invoked, is rebutted, is there any evidence to the contrary? Well, yes. Your presumptions are established by allegations, you say. Yes. Not evidence. Yes. So the presumption's up here, but then evidence with everything he put in to say yes, the ALJ disbelieved. I mean, it's sort of a catch-22. You say you can lie about whatever you want to as an allegation, and then once you get there and the witness testifies about his own injuries, you're banned by the witness's testimony? That's what I don't understand. Okay. The employer could have put one . . . He could have called him as an adverse witness, put him on the stand as an adverse witness and said, tell me about . . . didn't you lie about this, this, and this? That's evidence. Yes, it is. But that he lied is not evidence to the contrary. It's not evidence that the injury didn't occur as asserted and as admitted until the ALJ starts . . . Well, I thought there were evidence from the people who originally evaluated him and said on his leg lifts, there's no evidence of pain. All we see is a back strain on several reports. And that diagnosis, if such it was, was by an industrial medicine clinic that simply looked at x-rays and nothing else. I thought he did leg lifts, and the doctor's notes say that when he did the leg lifts, there was no evidence . . . It said the straight leg raising was negative, yes. That doesn't tell us anything about whether the herniated discs and all of the objective tests that were done thereafter. I mean, that wasn't the end of the treatment. And that doctor didn't say, oh, he's okay, he can go back to work. He said he needs some physical therapy, and then in 10 days he should be able to go back to work. This was a prediction, not an examination and medical opinion, that he was able to go back to work, that his condition was healed, that it had been indeed, as the doctor initially thought, only a strain. We then have an MRI that shows five levels of seriously disintegrated lower back discs and several levels of cervical disc herniations. Those are dangerous conditions that he should not be attempting any significant work. He certainly shouldn't be doing a transfer basket, which is the kind of thing that's required by the offshore work he was doing. The office of the presumption, as the Supreme Court has told us, is to control the result where there is an entire lack of competent evidence. That's the Supreme Court's first look at the presumption. That's what Section 20 presumptions do. They control the result where there's an entire lack of competent evidence. If the claimant's testimony is thrown out, then there's no competent evidence in support of the claim, or only a little bit. Not enough to furnish a basis for a decision. On the other hand, there is no evidence to the contrary. The employer could have drawn in the doctors who said, he has all these herniated discs, it's at least aggravated by this on-the-job event. The employer could have asked them in deposition or at hearing, would your opinion that it's the result of this injury change if you learned that the claimant's account of what happened there was not altogether true? If it had not been a 10-foot fall, if it was merely being jostled,  even the ALJ didn't say that. He just said, well, I don't know what happened. But we do have this exhibit, the employer's Exhibit 22, that tells a bit of a different story. And still it's not by an eyewitness. The employer had access to the other people who were there, presumably. They didn't bring in the other people to testify. There was no 10-foot fall. It was just a bump, incapable of having caused any harm to even a seriously compromised back. There's no such evidence. They never asked the doctors whether, as the ALJ posited, all of their opinions were based on what the claimant told them. It certainly was not true that, as the ALJ said, the doctor's opinions were entirely based on his subjective complaints and description of things. The MRI readings could not be faked. The damage that the surgeon found when he opened up the low back could not have been faked. Those were objective indications that there was a seriously disabling condition and there is a complete absence of any evidence to show that his back before this event was symptomatic at all. Let me ask you this. If we conclude that the BRB overreached in setting aside the ALJ's findings and sort of substituting its own, what is the right and I know that's not the outcome you want, but if that is our conclusion, what is the right approach? Do we send it back to the ALJ or do we then, you know, reverse and render judgment as the ALJ did in the second round? In other words, reinstate the ALJ's second judgment? Obviously, I would prefer that it be kicked back rather than the ALJ's. What's procedurally the right thing to do? If we conclude that your opponent has basically said, look, the BRB way overstepped what it's supposed to do. It kind of turned itself into an ALJ and that's not right. If we were to agree with that, then procedurally what do you do? You certainly would have to vacate the board's decision and the ALJ's decision on remand. I would suppose either you would kick it back to the board to take another look under correct legal principles which the court might articulate or you say under those principles which we now articulate, there's only one possible result the board could have reached and whatever that is. I really though, however . . . Let me put it another way. Is there any benefit to hearing more from the ALJ? No. I kind of get the feeling the BRB thought, let's not mess around with the third version of the ALJ. Whereas, you know, I think Judge Boggs was saying send it back again. You're correct in what you're saying but send it back again. The other two said, nah, we've heard enough from the ALJ. So I'm asking your view on that. Again, if we don't agree with you that it should just be affirmed, the BRB should be affirmed. The ALJ did say, and this was the board's basis in its second decision for not kicking it back to the ALJ again. The ALJ did say if the presumption was invoked, there is no evidence to the contrary to rebut it. The ALJ already said that. So that's why I think the critical question is what does it take to invoke the presumption? And if you can invoke it with the claimant's direct testimony plus his doctor saying it's causally related and the employer's own two defence medical examiners saying it's causally related, what does it take to invoke this presumption? I don't know what your definition of it is. I mean, the thing is everybody agrees he had some kind of strain. But I think the disagreement is the degree to which, you know, he obviously had prior back problems. And the disagreement is the degree to which these prior back problems are really the cause of the surgery, et cetera, et cetera, or whether there was an intervening incident that caused that. And it can only be speculation that there was. There isn't the slightest evidence that there was. And there isn't any evidence from the doctors that that's a possibility. I mean, of course it's always a theoretical possibility. But there's no evidence that anything like that happened. Just as there's no evidence that he got in a fight or fell down or whatever. The intervening incident being this one. In other words, you pretty much X-ray anybody or MRI anybody who's 50 and they're going to have a completely messed up shoulder, back, neck, knee, whatever, and they're still living their life, right? And so a lot of it is, as your opponent said, the subjective complaint of the person. And we know that nobody believes your client and he says, I was living life and then all of a sudden now I can't move. Particularly since he could move on the video. Well, the video's been greatly exaggerated. I mean, we have such things as the ALJ saying for an extended period of more than a minute he was bending down pulling weeds. At that point, I think the ALJ is really stretching the bounds of what's reasonable already. But... Your client wasn't in great pain to begin with and was looking for something to say, oh, uh-huh, now we have the jostle, I'm going to claim that. Because it is not unheard of in the history of workers' comp for somebody to latch on to a seeming work-related injury to now cover everything that ever happened to them. He had cleared the employer's pre-hire physical with the same doctor, Dr. Gidman, and he had been working offshore. Not for very long on this particular job, but he had been laid off previously, been on unemployment for a couple of months, but before that he'd been making $50,000, $60,000 a year doing strenuous work. You don't do that with 4 or 5 herniated discs, which is what they found on the MRI. The... Again, what it is that's necessary to invoke the presumption, whether enough has been done to invoke it, like whether enough has been submitted to rebut it if it has been invoked, is a question of law. It does not call for the assessment of the relative weight of conflicting evidence. That's what's for the ALJ once you get there. But you don't get there until step 3 of the process. Number 1, is the presumption invoked? Number 2, is it rebutted? If it's invoked and it's rebutted, then the case is to be decided on the whole body of evidence, pro and con, and that's the ALJ's function to resolve what the relative weight of the evidence is. But it's a legal question. As the cases we've cited, I think pages 26 through 28 of our brief from the First Circuit and the Ninth Circuit, recent cases that are the first that have actually addressed this, and have said, no, that's a question, that whether the evidence to rebut, submitted and rebuttal, is substantial evidence to the contrary, is a question of law. And a fortiori, the question whether whatever it takes to invoke the presumption, whether it's just allegations or some evidence, it's a legal question whether enough was submitted to have it invoked. Thank you for your attention. Mr. Smith? I was close. What do you say to the herniated disk argument that that can't be faked and therefore... He did have prior bad complaints. He lied on his pre-employment applications. That's one of the issues that the judge looked at. He said, look, he lied. He lied about his prior problems. He was an older gentleman with a bad history of a lot of drug use and violence and other things of that nature. Drug use doesn't cause back injuries. Well, it causes the teeth problems that he had. But be that as it may... But a precondition that gets worse because of the accident, he's entitled to benefits. If it gets an aggravation, but that is a finding of fact, and the judge specifically said there was no aggravation. He can't get past that as much as they try to. And the concept of the... And we both keep dancing around this issue of the presumption under 20A because it's critical in this case. In order to have the benefit of the 20A presumption, it's not enough that you allege. You have to prove your prima facie case. It's well-established Fifth Circuit law. He's doing a reach on the Supreme Court where they didn't really talk much about it or directly on that issue. He did receive treatment on a temporal basis. He went through physical therapy. The company doctor said, you're only released to do light duty for a period of time. When he goes back to work, he has horrible pain. He gets an MRI, unmistakable physical problems, surgery, which sounds like he was worse after whatever happened on that boat than before. So isn't that a prima facie case of aggravation of a pre-existing injury? No, ma'am. That's a series of events based on his credibility. There's no question he hit the deck. How far he fell, how hard he fell, he hit a deck. He was thrown from a basket. Nobody denies that. He was sent to get physical therapy. He got medication. He got drugs. The first doctor that's on released him and said, you can go back to work in a couple of weeks. All you've got is a sprain. That's the doctor that the ALJ chose to believe. It's within his purview to weigh the medical evidence and say, look, all the rest of them had to depend on the words that fell out of your mouth. Well, the MRI doesn't. What the surgeon found is not dependent on the words out of his mouth. In a temporal strain, isn't that some evidence? Prima facie case. Not necessarily, because all it shows you if you look at it temporally, when he got those examinations and those tests, they proved that that condition was there before the accident. No matter what, he had stenosis. He had all kinds of degeneration. He had all that before. Who said that the MRI showed his condition pre-accident? The doctors all said these are pre-existing degenerative conditions. They report that. These are pre-existing degenerative conditions. The symptomology is the issue. Because all of us, as Judge Haynes quite actually points out, you did my back, it probably looked like a disaster at this point. But I get through life and I'm not symptomatic. It becomes disabling and compensable and harm within the act when it becomes symptomatic. Who made the decision that surgery was required now as opposed to pre-existing? I mean, are you saying that had he gone to these same doctors before the incident they would have operated on his back because we look at the MRI you need back surgery? Assuming the words were falling out of his mouth that he was in pain at that point. He had no motivation to be in pain at that point. There was a downplaying a little bit on his credibility issues. He, in fact, went back up and down on his income tax and he admitted it under oath that he lied about that because it was a financial gain. If he, in fact, was not experiencing pain would your opinion be different? No, ma'am. For us, our burden is until he proves his prima facie case and it was our position all along he had no harm that he had a strain released and returned to work, you're good. After he got a lawyer, after he filed his action suddenly he goes to see the good Dr. Estes over there in Houston and the rest is history. Our position was all you had was a strain from us and that's what we're here and that's what we're going to prove and that's what we did. Did your doctor say all he had was a strain and assuming he's not telling the truth about pain, all of this treatment was unnecessary? No, ma'am. Again, I didn't necessarily have to prove that it was unnecessary. Alright, let's move to the second piece. Assuming we disagree with you on the prima facie case, then what? If he has if he gets the benefit of the presumption under the circumstances, then he would be entitled to the benefit. That's why we're fighting so hard about this presumption. Right before you sat down, you said well even if he gets the presumption and then you said I'll address that on rebuttal so you're conceding that... No, I'm sorry I cut you off. Are you conceding that it's all about the presumption period? Well not exactly because the judge also had the opinion that he was not disabled based on his interpretation of the facts. Okay, let me ask you one more time. If we disagree with you that he we assume that he made a prima facie case, then what? Well there would be a compensable event however the judge also determined independently of that, the ALJ determined independently of that although again the BRB disagreed with him that there was no evidence of ongoing disability therefore he had no right to compensation. Again I the critical issue... If he would get lifetime meds he just wouldn't get the compensation. I don't know what as a practical matter I'm not sure how that would work out. I think he probably would have to remand for further... What about the ALJ's statement that if he did not make his if he did make his prima facie case there's no... that has not been rebutted. I agree with you. Yes ma'am that's I agree with you. What does that mean? That means well it means quite that there is no rebuttal on the... our burden is to show by substantial evidence once he creates presumption and we have to put forth substantial evidence to make this presumption fall out. There is no substantial evidence because I didn't have anything I could attack the other doctors with afterwards because they operate on them. My argument was look that's fine but it had nothing to do with us and that's why we didn't have to go after it. He still has that burden and he didn't carry it and I understand you're asking me a hypothet well if we find somehow he did carry it despite the evidence and the ALJ's findings well he carried it, he carried it and he gets the benefit. That's what the 28 presumption does. I only ask that we remember that the 28 presumption is not based on allegation it has to be based on actual evidence of the harm of which he complains. It's not mere allegation. Thank you. Thank you. I appreciate it. Any other questions? Any other questions?